In re Lillian Hagopian COREY, Debtor.

Helen B. RYAN, Trustee; Kulalani, Ltd.; Florence A. Ellis; Auna Foundation; William S. Ellis, Jr., Appellants,

v.

Herbert H.K. LOUI; Alberta K.A. Loui; Lillian Hagopian Corey, Appellees.
(Two Cases)

William S. ELLIS, Jr., Appellant,

v.

Lillian Hagopian COREY, Appellee.

Helen B. RYAN, Trustee; Florence A. Ellis; Auna Foundation; William S. Ellis, Jr., Appellants,

v.

Lillian Hagopian COREY, Appellee.

Nos. 88–15350, 88–15351, 88–15595 and 88–15778.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 1, 1989.

Decided Dec. 27, 1989.

---

**3.** See the discussion in part B above.

William S. Ellis, Jr., Honolulu, Hawaii, in pro per.

Helen B. Ryan, Honolulu, Hawaii, in pro per.

Walter R. Schoettle, Honolulu, Hawaii, for creditor-appellants.

James N. Duca, Kessner, Duca & Maki, Honolulu, Hawaii, for debtor-appellee.

Ivan M. Lui–Kwan, Presley W. Pang, Honolulu, Hawaii, for appellees Herbert H.K. Loui and Alberta K.A. Loui.

Before SNEED, KOZINSKI and THOMPSON, Circuit Judges.

KOZINSKI, Circuit Judge:

Who owns the Silversword Inn? This seemingly innocuous question has been litigated vigorously for nearly two decades in various bankruptcy proceedings and in the state courts of Hawaii. We resolve this and many other questions today and, in so doing, put an end to a dispute that has consumed a disproportionate share of our legal system's energy and resources.

## I

The facts of this case, many of which are set forth in greater detail in our earlier opinion, *Ellis v. Corey (In re Ellis)*, 674 F.2d 1238 (9th Cir.1982), are largely not in dispute. In March 1971, William Ellis, then a Chapter XII debtor under the Bankruptcy Act of 1898, conveyed two adjoining parcels on the island of Maui to Bessie Hagopian. Located on one parcel was the Silversword Inn.

Under the terms of the Ellis–Hagopian conveyance, Lillian Corey, Hagopian's sister, was to pay Ellis $85,500. In return, Ellis was to transfer to Hagopian title to the parcels "free and clear of all encumbrances," but subject to two important exceptions. First, Hagopian agreed to be bound by existing lease agreements that permitted the Silversword Corporation, an entity controlled by Ellis, to occupy and operate the Inn. Second, Hagopian's title was subject to an exclusive option held by Ellis to repurchase the Inn. The option provided:

Now, therefore, the Purchaser, in consideration of the premises and of the foregoing conveyance to her, does hereby give to the Sellers an exclusive option for a period of two (2) years from the date hereof, to purchase from the Purchaser all of the interest of the Purchaser in said Lot 2 described in said Deed for the sum of EIGHTY–FIVE THOUSAND & No/100 DOLLARS ($85,000.00) plus five percent (5%) thereof per annum from the date hereof, and all of the interest of the Purchaser in said Lot 4 for the sum of ONE THOUSAND & No/100 DOLLARS ($1,000.00) plus five percent (5%) thereof per annum from the date hereof; PROVIDED, HOWEVER, that the foregoing option may not be exercised sooner than September 1, 1971;

Option, and Consent to Pledge and Assignment Thereof (Mar. 4, 1971) at 2.

In July 1973, Hagopian transferred her interest in the Silversword Inn to Lillian Corey. Ellis had previously assigned his

option to purchase the Inn to Upland Investments, another entity he controls. With Corey's consent, Upland renewed the option twice, in 1973 and 1975 respectively, but never exercised it. The option expired by its own terms on December 31, 1976.

Believing that she owned the Silversword Inn outright upon the expiration of Upland's option, Corey signed a standard form Deposit Receipt, Offer and Acceptance (DROA) in January 1977, agreeing to convey the Inn to Herbert and Alberta Loui (the Louis) for $575,000. When Ellis received notice of the impending sale, he expressed, for the first time, doubt as to the validity of the 1971 conveyance to Hagopian. On February 26, 1977, he wrote Corey the following letter:

> This will let you know in writing that I do not concur with your signing [the DROA]. Nor do I concur with the use of [the chosen escrow company]. Whether or not I concur in other terms would depend at least somewhat on how much of the net proceeds would come to Upland and on what schedule.... I also suggest that Upland be included as a Seller in any DROA. Otherwise, under the law of Hawaii, you might not be able to deliver clear title.

See Bankr. Nos. 84–0371, 72–391 and 70–249, Decision and Order (Aug. 12, 1988) at 36.

During the months that followed, Ellis tried to convince Corey that she did not in fact own the Silversword Inn. The court found that he used his friendship with Corey to gain her confidence in an attempt to confuse and deceive her as to the nature of the March 1971 transaction between Ellis and Hagopian. He told Corey that, under Hawaii law, many transactions that facially appear to be conveyances in fee simple are in fact mortgages. In particular, he cited *Kawauchi v. Tabata*, 49 Haw. 160, 413 P.2d 221 (1966), which held that a lender may never use an automatic defeasance provision in a mortgage agreement to defeat the mortgagor's right of redemption. According to *Kawauchi*, "[s]ince the right of redemption may not be waived, the form of the instruments cannot control the case

if in reality the transaction was a mortgage." 413 P.2d at 227.

Ellis's plan was clear; he wanted to persuade Corey that the conveyance between himself and Hagopian was not a transfer in fee simple subject to an option, but only a mortgage, with equitable title to the Inn remaining in Ellis. This, he hoped, would convince Corey not to go forward with the sale to the Louis, and would eventually enable him to claim the Inn on behalf of Upland. Ellis apparently was successful in blocking the sale, for on August 1, 1977, the scheduled closing date under the DROA, Corey refused to convey title to the Inn.

Twelve days later, the Louis filed a complaint against Corey in Hawaii state court seeking specific performance and damages for breach of contract. Haw. Civil No. 52308. During the course of this action, Corey defended on the theory espoused by Ellis; that is, she claimed that the 1971 transaction between Ellis and Hagopian was in fact a mortgage, not a sale. As a result, Corey claimed she was unable to transfer title to the Inn because she was not its owner. The state court rejected Corey's defense and ordered her to proceed with the sale. This portion of the trial court's ruling was affirmed by Hawaii's Intermediate Court of Appeals. *See Loui v. Corey*, 2 Haw.App. 556, 634 P.2d 1055 (1981). The Hawaii courts, however, never resolved the mortgage issue and declined to determine the true nature of the 1971 transaction. *See In re Ellis*, 674 F.2d at 1249–50.

Concurrent with the state court proceedings, Ellis filed in his bankruptcy proceeding a "Complaint to Determine Lien" against Corey. Adv. Pro. No. 72–391(3). The complaint sought relief on the mortgage theory raised by Corey in defense of the Louis's state court action. Ellis, Corey and certain entities controlled by Ellis brought a similar action against the Louis. Adv. Pro. No. 72–391(4). Following the Louis's successful intervention in No. 72–391(3), the court consolidated Nos. 72–391(3) and 72–391(4).

On September 12, 1980, the bankruptcy court issued a ruling that, as a matter of law, the March 1971 transaction between Ellis and Hagopian was a transfer in fee simple and not a mortgage. Ellis and his entities appealed this judgment, and we reversed. We held that the bankruptcy court improperly relied on the face of the documents in the 1971 transaction without, as required by Hawaii law, examining the intent of the parties. *See In re Ellis*, 674 F.2d at 1247. We remanded for the bankruptcy court to make a "fresh determination of the mortgage question." *Id.* at 1250. Before the bankruptcy court could resolve the mortgage question, however, appellants moved to dismiss the adversary proceeding.

Meanwhile, the Louis returned to state court and, on April 24, 1984, obtained a judgment for $757,000 in the form of "delay damages" for the rental value of the property from August 1, 1977, to April 30, 1983, attorney's fees and emotional distress. In response to this substantial judgment against her, Corey filed for protection under Chapter 11 of the 1978 Bankruptcy Code.

After unsuccessfully appealing the state court judgment to the Hawaii Supreme Court, Corey commenced an adversary proceeding, No. 85–0185, seeking to challenge the Louis's state court judgment and to establish her own rights to the Silversword Inn. On September 15, 1986, the district court, sitting in bankruptcy,[1] granted summary judgment in favor of the Louis as to their state court judgment, but permitted Corey to go forward with her claim of ownership to the Inn. However, because the district court apparently believed that the dismissal of Adv. Pro. Nos. 72–391(3) and 72–391(4) barred Corey from making a claim for title of the Inn in her own bankruptcy proceeding, the court sua sponte vacated the dismissal of those actions on April 7, 1988.

On February 29, 1988, the Louis filed a proposed Chapter 11 plan of reorganization of Corey's estate. Under the plan, Corey's creditors would be paid in full through a staged sale of her assets. Although the plan relied principally on the Silversword Inn's sale for the required funds, the court found that Corey had enough assets, even aside from the Inn, to pay her creditors' claims in full. The plan was approved on the basis of the Louis's votes in favor of confirmation. *See* Order Confirming Plan Proposed by Loui Creditors (June 24, 1988). Although Ellis, his controlled entities and Helen Ryan, Ellis's trustee in bankruptcy, opposed the plan, the court did not count their votes because it had previously estimated their claims against the Corey estate to be worthless.

The district court was more concerned about appellants' continuing claims that they were the sole owners of the Silversword Inn. On February 9, 1988, the court announced that it would conduct a hearing to resolve the mortgage question and determine ownership of the Inn. This would enable Corey to sell the Inn free and clear of any liens or other interests, and to resolve the Ellis-controlled entities' claims against Corey arising from their alleged ownership of the Inn.

Commencing on June 15, 1988, the district court conducted a five-day bench trial to determine the ownership of the Silversword Inn. At this time, the court also denied a number of the Ellis-controlled entities' pre-trial motions, including a request for a jury trial. Following the trial, the court found that: (1) in accordance with our decision in *In re Ellis*, it was required to determine the "true substance" of the March 1971 transaction, based on the intent of the parties, Bankr. No. 70–249, Decision and Order (Aug. 12, 1988) at 2, 47–48; (2) the parties to the transaction intended it to be a conveyance in fee simple, not a mortgage, *id.* at 48–50; and (3) Ellis's actions

1. The Honorable Martin Pence, Senior District Judge, presided over Corey's Chapter 11 proceedings because Hawaii's only bankruptcy judge recused himself. We treat an appeal from the decision of a district judge in a bankruptcy proceeding as an appeal from the final decision of a district court appealable under 28 U.S.C. § 1291 (1982). *Klenske v. Goo (In re Manoa Fin. Co.)*, 781 F.2d 1370, 1372 (9th Cir.1986) (per curiam), *cert. denied sub nom., Yamamoto v. Klenske*, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

were intended solely "to frustrate the efforts of both the Louis and, later, Corey, to gain control of the Inn property," *id.* at 40–41. Therefore, the court concluded, Corey was "the sole owner of legal and beneficial title to the unencumbered fee simple interest" in the Silversword Inn. Bankr. Nos. 84–0371, 72–391 and 70–249, Judgment (Aug. 29, 1988) at 2. As a result, Ellis, Ryan and the Ellis-controlled entities, including the Auna Foundation, which claimed to be the current successor to Ellis's and Upland's chain of title, were held to have no interest in the property.

Finally, on November 30, 1988, the district court ordered the Ellis entities to relinquish possession of the Inn to Corey, pursuant to the turnover provisions of 11 U.S.C. § 542 (1988). The court also enjoined Ellis and his controlled entities from interferring with any efforts by Corey to sell the Inn.

## II

A. Confirmation of the Louis's Plan for Reorganization

1. Appellants contend that the Louis's plan for reorganization should have been deemed rejected because Ellis, Ryan and the Ellis-controlled entities, claiming in excess of one million dollars against the Corey estate, voted against the plan. Appellants' claims included unliquidated sums for "emotional distress," "paralegal services" and "lost rent" on the Silversword Inn. The Louis's claims against the estate, by comparison, were approximately $700,000. Thus, if appellants' claims were valid, their votes against confirmation of the plan would have been sufficient to defeat it, *see* 11 U.S.C. §§ 1126(a), 1129(a) (1988), or at least force the court to use the "cram down" provisions of 11 U.S.C. § 1129(b) (1988).

■ The district court, however, did not consider appellants' votes because it had estimated their claims against the Corey estate to be zero. Under 11 U.S.C. § 502(c)(1) (1988), a court shall estimate any contingent or unliquidated claims against the estate that "would unduly delay the administration of the case." Given the highly speculative nature of appellants' claims, the district court correctly found estimation to be appropriate. Otherwise, the confirmation of the Louis's plan would have been unduly delayed to the detriment of Corey and her real creditors.

■ A court has broad discretion when estimating the value of an unliquidated claim. *Addison v. Langston (In re Brints Cotton Mktg., Inc.),* 737 F.2d 1338, 1341 (5th Cir.1984); *Bittner v. Borne Chem. Co.,* 691 F.2d 134, 136 (3d Cir.1982). Here, the court made factual findings regarding the value of appellants' claims. *See, e.g.,* Withdrawal and Vacating of Order Estimating Claim of William S. Ellis and Order (June 14, 1988); Order Estimating Claim of William S. Ellis (Florence Ellis) (July 13, 1988). These estimates have since been confirmed in final adjudications. *See, e.g.,* Order Disallowing Claim of William S. Ellis, Jr. (Oct. 3, 1988). From our review of the record, it is clear that the district court did not abuse its discretion in making the estimates. Appellants were not Corey's creditors and had no right to object to the Louis's plan.

■ 2. We also reject appellants' attempts to challenge the Louis's claims against the Corey estate. The Louis's claims arise from the Hawaii court's decision in *Loui v. Corey,* Haw. Civil No. 52308. Appellants raise a number of objections to the state court's decision based on the Constitution and state and federal law. Appellants' claims thus represent a collateral attack upon the judgment of a state court. This attack is beyond the jurisdiction of federal courts to consider, even though it purports to raise constitutional issues. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983); *Worldwide Church of God v. McNair,* 805 F.2d 888, 890–91 (9th Cir.1986).

■ 3. Appellants' claim that the state court improperly interfered with the federal courts' exclusive jurisdiction over bankruptcy proceedings is also without merit. The Hawaii judgment was against Corey who, throughout the state court proceed-

ings, was not yet under the protection of federal bankruptcy laws. Thus, the judgment could not prejudice her rights as a Chapter 11 debtor. We also reject appellants' claim that the Hawaii judgment was an unlawful preference, because appellants have failed to show that Corey was insolvent or in danger of becoming insolvent at the time the judgment was recorded, *see* 11 U.S.C. § 547(b) (1988) ("the trustee may avoid any transfer of an interest of the debtor in property ... made while the debtor was insolvent").

■ The state court judgment also did not interfere with the Ellis bankruptcy proceedings, as the state court never purported to grant title to the Louis or to affect Ellis's use or possession of the Silversword Inn. The judgment thus did not affect Ellis's rights as a debtor under the federal bankruptcy laws. *Compare Gonzales v. Parks*, 830 F.2d 1033, 1035–36 (9th Cir. 1987) (state court was without jurisdiction to consider whether filing of bankruptcy petition constituted abuse of process).

■ 4. Similarly unavailing is appellants' challenge to the Louis's plan on the grounds that it was not proposed in good faith as required by 11 U.S.C. § 1129(a)(3) (1988). In order to satisfy the statutory requirement of good faith, a plan must be intended to achieve a result consistent with the objectives of the Bankruptcy Code. *Stolrow v. Stolrow's, Inc. (In re Stolrow's, Inc.)*, 84 B.R. 167, 172 (Bankr. 9th Cir. 1988); *Jorgensen v. Federal Land Bank of Spokane (In re Jorgensen)*, 66 B.R. 104, 108–09 (Bankr. 9th Cir.1986). Granting the district court's findings substantial deference, we find no absence of good faith on the part of the Louis in proposing this plan. The Louis's plan appears to be a fair and well-reasoned effort to end the years of litigation surrounding the Corey and Ellis bankruptcies; it results in payment in full of all creditors, with a substantial portion of the estate remaining in the debtor, an uncommon result in bankruptcy proceedings. The district court was well within its discretion in approving the plan.

**B. Ownership of the Silversword Inn**

Central to this dispute is the question of ownership of the Silversword Inn. Appellants raise a number of objections, both procedural and substantive, to the district court's finding that Corey owns the Inn. We address each of these in turn.

1. Appellants first challenge the district court's sua sponte order of April 7, 1988, vacating its earlier order dismissing adversary proceedings Nos. 72–391(3) and 72–391(4). They contend that Fed.R.Civ.P. 60(b), as made applicable by Bankr.R. 9024, prohibits a district court from vacating an earlier decision on its own motion. They further argue that the dismissal of Nos. 72–391(3) and 72–391(4) bars Corey from litigating ownership of the Inn. Thus, appellants contend, because the earlier dismissal was improperly vacated, the district court's judgment finding Corey to be the owner of the Inn is equally invalid.

■ We need not reach the question of whether Rule 60(b) permits a court to vacate a prior judgment sua sponte. The record shows that the appellants voluntarily dismissed adversary proceedings Nos. 72–391(3) and 72–391(4) pursuant to Bankr.R. 7041 (incorporating Fed.R.Civ.P. 41). Because the dismissal order was silent as to whether it was with or without prejudice, it is presumed to be a dismissal without prejudice. *See* Fed.R.Civ.P. 41(a)(2). The dismissal order therefore has no res judicata effect. *See Humphreys v. United States*, 272 F.2d 411, 412 (9th Cir. 1959) ("a suit dismissed without prejudice pursuant to Rule 41(a)(2) leaves the situation the same as if the suit had never been brought in the first place"); *see also Payne v. Panama Canal Co.*, 607 F.2d 155, 158 (5th Cir.1979); *Greenlee v. Goodyear Tire & Rubber Co.*, 572 F.2d 273, 275–76 (10th Cir.1978). It makes no difference, then, in the context of the appellants' argument, whether or not the bankruptcy court erred in vacating the earlier dismissal order.

■ 2. Appellants also contend that Corey is judicially estopped from claiming that she is the owner of the Silversword Inn because she advanced the opposite position during the state court proceedings in

*Loui v. Corey* and in the federal court proceedings in *In re Ellis.*

In *Stevens Tech. Services, Inc. v. SS Brooklyn,* 885 F.2d 584 (9th Cir.1989), we recently described the two competing views of judicial estoppel. Under the majority view, judicial estoppel does not apply unless the assertion inconsistent with the claim made in the subsequent litigation "was adopted in some manner by the court in the prior litigation." *Id.* at 588. Under the minority view, judicial estoppel can apply even when a party was unsuccessful in asserting its position in the prior judicial proceeding, "if the court determines that the alleged offending party engaged in 'fast and loose' behavior which undermined the integrity of the court." *Id.* at 589. Appellants' claim of judicial estoppel fails under either test. Neither the Hawaii courts nor the federal courts adopted Corey's position. Nor is there any indication that Corey is playing "fast and loose" with the judicial system. The district court found that Corey's change of position was occasioned by her realization that Ellis was not her friend and had duped her. This finding is not clearly erroneous. *See Konstantinidis v. Chen,* 626 F.2d 933, 939 (D.C.Cir.1980) (doctrine of judicial estoppel " 'has never been applied where [the party's] assertions were based on fraud, inadvertence, or mistake' ") (quoting *Johnson Serv. Co. v. Transamerica Ins. Co.,* 485 F.2d 164, 175 (5th Cir.1973)).

■■■ 3. Appellants next argue it was improper for the district court to consolidate the Ellis and Corey bankruptcy proceedings. However, consolidation was within the discretion of the court, *see* Bankr.R. 7042 (incorporating Fed.R.Civ.P. 42(a)); *A.J. Indus. v. United States Dist. Court,* 503 F.2d 384, 389 (9th Cir.1974), and the consolidation was clearly in the interest of justice, as it helped bring the Corey and

Ellis disputes to a long-overdue close. We therefore see no abuse of discretion.

4. Appellants contend that the district court erred in making findings of fraud, misrepresentation and estoppel not pleaded by Corey, as required by Bankr.R. 7009 (incorporating Fed.R.Civ.P. 9(b)). However, the court explained that its decision that Corey was the true owner of the Silversword Inn was not dependent on these findings; the court's decision rested on its interpretation of the 1971 transaction between Ellis and Hagopian as a sale rather than a mortgage.

■■■ 5. Appellant Auna Foundation argues that the court improperly denied it a jury trial on the issue of who owns the Inn.[2] In *Granfinanciera, S.A. v. Nordberg,* — U.S. —, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court established the limits of the seventh amendment jury right in the context of bankruptcy proceedings. The Court held that the seventh amendment does not protect a creditor's right to jury trial in a bankruptcy proceeding when that creditor has made claims against the debtor's estate. *Id.* 109 S.Ct. at 2799. The Auna Foundation, however, has not itself made a claim against Corey's bankruptcy estate; it merely opposes Corey's effort to establish title to the Inn. The Foundation therefore has not subjected itself to the court's equitable power to consider claims against the estate. *Id.* at 2799 n. 14 (citing *Katchen v. Landy,* 382 U.S. 323, 335, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966)). Thus, in order to determine whether the Foundation was entitled to a jury trial, we normally would be required to consider whether the district court's determination of the title issue was legal or equitable in nature.

We need not handle this prickly issue[3], however, because the Foundation was not,

---

2. Appellant Kulalani also appeals the court's denial of its request for a jury trial. However, by its own admission, Kulalani neither held title nor possession of the Silversword Inn at the time of trial. Thus, we see no basis for its participation as a party. Because Kulalani could not legitimately claim an interest in the Inn, there were no issues of fact for a jury to consider.

3. Generally when a party not in possession seeks to establish title to land against one who is in possession, the action is characterized as one for ejectment, which is legal in nature. *See Fort Mojave Tribe v. Lafollette,* 478 F.2d 1016, 1018 n. 3 (9th Cir.1973); *see also Navajo Tribe of Indians v. New Mexico,* 809 F.2d 1455, 1462 n. 15 (10th Cir.1987). In this case, Corey, who is not

in any event, entitled to a jury trial as it is the controlled instrumentality of an entity that, under *Granfinanciera*, itself was not entitled to a jury. The district court found that the Foundation is under the sole control of Ellis and members of his "immediate and controlled family." Bankr. Nos. 84–0371, 72–391 and 70–249, Decision and Order (Aug. 12, 1988) at 40. The court also found that the transactions leading up to the Foundation's claim were carried out with the intent of clouding title to the Inn and frustrating the efforts of both the Louis and Corey to gain control of the Inn. *Id.* at 40–41. Finally, the record discloses that the Auna Foundation acquired title to the Inn long after notice of the trial had been circulated, barely a week before the scheduled trial date.[4] Because Ellis and a number of his other controlled entities have made substantial claims against Corey's estate, they would not themselves be entitled to a jury trial. They lacked the power to change that result by placing the Inn into the hands of a fully controlled instrumentality. We look beyond the form of the transaction and conclude that the Foundation was not entitled to a jury trial.[5]

■ 6. Finally, we consider the merits of the district court's judgment on the mortgage question. Appellants contend that the district court incorrectly found the 1971 transaction between Ellis and Hagopian to be an outright sale, rather than a mortgage. As we held in *In re Ellis*, under Hawaii law, a deed absolute coupled with a repurchase option creates a mortgage when the parties so intend. 647 F.2d at 1247; *see Kawauchi v. Tabata*, 49 Haw. 160, 413 P.2d 221 (1966). These cases establish that the intent of the parties is the controlling factor in determining whether a transaction is a sale or a mortgage. *See In re Ellis*, 647 F.2d at 1247; *see also In re Estate of Damon*, 5 Haw.App. 304, 689 P.2d 204, 209 (1984) ("the intent of the parties is crucial in determining the nature of the transaction").

After a five-day trial, the district court determined that the parties to the March 1971 transaction had intended it to be an outright sale, subject merely to the repurchase option held by Ellis. Unlike the lender in *Kawauchi*, Corey and Hagopian never discussed with Ellis the prospect of making a loan and they paid a fair market price. These findings are not clearly erroneous, particularly since the intent of the parties, as found by the district court, coincides with the face of the transaction.

Moreover, we seriously doubt whether the rule in *Kawauchi* applies to this case. The Hawaiian practice of construing certain conveyances in fee simple as mortgages is an equitable concept, designed to protect a mortgagor's right of redemption

in possession, is seeking to establish title against Ellis and his entities, who are in possession.

Unlike the typical action for ejectment, however, the trial to determine ownership of the Inn did not result directly in an order dispossessing Ellis of the Inn. It was not until three months after the judgment that Corey obtained possession of the Inn pursuant to 11 U.S.C. § 542(a) (1988), which requires an entity in possession of the debtor's property to deliver that property to the debtor or the trustee. Because we hold that the Auna Foundation was not entitled to a jury trial as an instrumentality of Ellis, we need not express an opinion as to whether there is generally a right to a jury trial under section 542.

4. We also note the unorthodox way in which the Auna Foundation became involved in this action. Rather than formally filing a claim of ownership of the Inn and moving to intervene in the proceedings, the Foundation's lawyer, who is also counsel for a number of the other Ellis-controlled entities, added the Foundation's name to various motions filed a few days before the trial. The Foundation never obtained independent counsel, and its litigation posture was identical to that of other Ellis entities. Having failed to go through the normal mechanics for joining as a party in an ongoing district court proceeding, the Foundation failed to establish an independent presence in the litigation.

5. We note, by way of analogy, that instrumentalities of foreign nations, which also are not protected by the seventh amendment, are not entitled to jury trials. *See Arango v. Guzman Travel Advisors*, 761 F.2d 1527, 1534–35 (11th Cir.), *cert. denied sub nom., Arango v. Compania Dominicana de Aviacion*, 474 U.S. 995, 106 S.Ct. 408, 88 L.Ed.2d 359 (1985); *Goar v. Compania Peruana de Vapores*, 688 F.2d 417, 426 (5th Cir.1982); *Rex v. Cia. Pervana De Vapores, S.A.*, 660 F.2d 61, 62–69 (3d Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *Williams v. Shipping Corp. of India*, 653 F.2d 875, 881–83 (4th Cir.1981), *cert. denied*, 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982).

from overreaching lenders. *See Kahau v. Booth*, 10 Haw. 332, 334 (1896) ("Once a mortgage always a mortgage, and the mortgagor is allowed to redeem."). In this case, however, the district court found that any overreaching was done by Ellis, not Corey. According to the court, Ellis "intended and attempted to use his secret knowledge and interpretation of *Kawauchi* to ensnare, entrap, and defraud an unsophisticated friend who meant only to help him." Decision and Order at 52.[6] We do not believe the Hawaii courts would apply an equitable doctrine to reach an inequitable result. *See Shinn v. Edwin Yee, Ltd.*, 57 Haw. 215, 553 P.2d 733, 744 (1976) (a party may not "profit by his own misconduct"); *Kawauchi*, 413 P.2d at 236 ("he who seeks equity must do equity") (internal quotations omitted). We hold therefore that the district court properly construed the March 1971 transaction as a sale.

## C. Summary Judgment Requiring Appellants to Relinquish Possession of the Inn

■ Appellants argue that the bankruptcy court incorrectly held, as a matter of law, that they were required to relinquish possession of the Silversword Inn to Corey. However, under 11 U.S.C. § 542(a) (1988), an entity in control of property that a trustee could use or sell pursuant to 11 U.S.C. § 363 (1988), must turn that property over to the trustee. Appellants may be correct in arguing that, prior to relinquishing control of the property, a creditor is entitled to some form of security; however, appellants do not in fact have any valid claims against Corey's estate, all such claims having been found worthless. Thus, they cannot claim that their rights as creditors have been prejudiced.

On the merits, we hold that the district court's grant of summary judgment was proper because there were no material issues of fact in dispute. Even if equitable defenses such as laches were available to defeat the operation of section 542, appellants have failed to show they would be entitled to any such defenses.

## D. Validity of Injunction

■ Appellants argue that the court's order enjoining them from communicating with prospective buyers of the Silversword Inn violates their first amendment rights of speech and association. However, the injunction merely bars them from making false claims of ownership regarding the Inn; they are free to speak of anything else they please. Because the injunction only restrains false or misleading commercial speech, it is consistent with the first amendment. *See U–Haul Int'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034, 1042 (9th Cir. 1986).

## E. Judicial Bias

■ Appellants make a broadside attack on the impartiality of Judge Pence sitting as a bankruptcy judge. We are unimpressed. A judge's comments aimed at facilitating orderly proceedings are not,

---

**6.** This case provides a textbook example of how equitable doctrines, developed by the courts in an effort to avoid fraud and oppression, can be manipulated to achieve fraud and oppression. In allowing the parties to undermine the finality of a facially unconditional transfer in *Kawauchi*, the Hawaii Supreme Court no doubt hoped to achieve a fairer result, consistent with the widespread notion that justice will be served if only parties are allowed to explain their undocumented intentions and reservations.

What the court might have overlooked, however, is the unfairness that can flow from the necessity of litigating a claim such as Ellis's. When parties are allowed to undermine the finality of written instruments, every transaction can be held hostage to competing claims as to what might have been said or believed by any of the participants. Moreover, disregarding the plain language of a deed or contract may, as in this case, enable a party to enter the transaction with the intent "to ensnare, entrap, and defraud." In any event, litigating such claims, no matter how legitimate, is expensive, time-consuming and nerve-racking.

While holding parties to the words of their written instruments may result in an occasional unfairness, it certainly avoids the type of delay, unfairness and expense generated in this case. Suffice to say that, but for the *Kawauchi* rule, this case would have been over in 1982, or sooner. On balance, we believe that the far wiser, as well as fairer, rule is one which puts parties on notice that they will be bound by the terms of the instruments they sign. *See Trident Center v. Connecticut General Life Ins. Co.*, 847 F.2d 564, 569–70 (9th Cir.1988).

in and of themselves, evidence of bias. *See Hansen v. Commissioner*, 820 F.2d 1464, 1467 (9th Cir.1987). Moreover, judicial bias must arise from extrajudicial sources. *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966). In this case, the record shows clearly that, to the extent the learned district judge was inclined to rule against appellants, this was the product of his knowledge of the facts of the case gained during judicial proceedings, not of any extrajudicial information.

### F. Conclusion

Appellants make a variety of other arguments, too numerous and too insubstantial to discuss in any detail. Suffice it to say that we have studied the voluminous record in this case thoroughly and have given careful consideration to all of appellants' contentions. We find no error that would warrant reversal of the judgments below. The bankruptcy court did an admirable job with a difficult case. Doubtless, not everyone is satisfied with the result; perhaps no one is completely satisfied. Yet, there must be an end to every dispute so that the parties may go on with their lives unburdened by the demands and risks of litigation, and the court may turn its attention to other cases. After two decades of litigation, that point has been reached. This case is at an end.