

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-16-1065-JuKuMa |
| | BAP No. EC-16-1117-JuKuMa |
| LISA MARIE AHRENS, | (consolidated) |
| Debtor. | Bk. No. 14-bk-29813-MSM |
| THE GOLDEN 1 CREDIT UNION, | |
| Appellant, | |
| v. | M E M O R A N D U M[*] |
| J. MICHAEL HOPPER, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on October 20, 2016
at Sacramento, California[**]

Filed - October 27, 2016

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable Michael S. McManus, Bankruptcy Judge, Presiding.

_____

Appearances:    Valerie A. Bantner Peo of Buchalter Nemer argued
for appellant The Golden 1 Credit Union; Kristen
Renfrow argued for appellee J. Michael Hopper,
chapter 7 trustee.

_____

_____

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

[**] The Panel consolidated BAP Nos. EC-16-1065 and EC-16-1117 by order entered on May 19, 2016.

-1-

Before: JURY, KURTZ, and MARTIN,[***] Bankruptcy Judges.

Appellant, The Golden 1 Credit Union (Golden 1), filed a proof of claim (POC) in the underlying chapter 7[1] bankruptcy case of Lisa Marie Ahrens (Debtor) for $17,282.29, which represented the balance owed to Golden 1 under a contract for the purchase of a Mazda. Using the amounts shown on Debtor's schedules, Golden 1 bifurcated its claim showing $13,907 as secured and $3,375.29 as unsecured.

Debtor indicated her intent to reaffirm the entire debt owed to Golden 1, but she never did. She continued to make timely installment payments which were accepted by Golden 1 throughout her bankruptcy case and received her discharge. Golden 1 has never declared the contract to be in default.

Appellee, chapter 7 trustee J. Michael Hopper (Trustee), objected to the unsecured portion of the POC, contending that there was insufficient evidence regarding the amount of the deficiency in light of the on-going payments and lack of default. Trustee also asserted that he was entitled to attorney's fees and costs based on the attorney fee clause in the underlying sale contract and Cal. Civ. Code § 1717 which made the clause reciprocal.

---

[***] Honorable Brenda K. Martin, United States Bankruptcy Judge for the District of Arizona, sitting by designation.

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

-2-

After multiple hearings, the bankruptcy court found that Golden 1 had no unsecured deficiency claim because it had not declared a default, continued to accept payments from Debtor, and neither Debtor nor Golden 1 could "strip down" the lien on the car under the holding in Dewsnup v. Timm, 502 U.S. 410 (1992). Alternatively, the bankruptcy court concluded that Golden 1's deficiency claim was contingent or unliquidated and estimated the claim at $0. The bankruptcy court entered civil minutes sustaining Trustee's objection and closed the record as to all issues except for allowing Trustee to amend his request for attorney's fees and allowing Golden 1 to challenge the reasonableness of all fees and costs. Golden 1 filed a notice of appeal from this ruling, commencing BAP No. EC-16-1065.

Thereafter Trustee submitted pleadings relating to his additional request for attorney's fees and costs which Golden 1 challenged on reasonableness and other grounds. After a hearing, the bankruptcy court entered an order (1) sustaining Trustee's objection; (2) disallowing the unsecured portion of Golden 1's POC; and (3) awarding attorney's fees and costs in favor of Trustee and against Golden 1 in the amount of $14,436.60. Golden 1 filed a notice of appeal from that order, commencing BAP No. EC-16-1117.

Golden 1 obtained a stay pending appeal from the bankruptcy court as to the payment of the attorney's fees and costs. On May 19, 2016, the Panel entered an order consolidating the two appeals. For the reasons set forth below, we AFFIRM.

## I. FACTS

In January 2013, Debtor bought a Mazda with a dealer

-3-

financed loan in the amount of $23,813.99 under a retail installment sale contract (Sale Contract), which was secured by the car. The dealer assigned the Sale Contract to Golden 1 and Golden 1 perfected its lien on the car.

On September 30, 2014, Debtor filed a chapter 7 petition. Debtor showed in her schedules that she owed $17,282.29 to Golden 1 under the Sale Contract and listed the car's value as $13,907. Debtor's Statement of Intention indicated that she intended to reaffirm the debt owed to Golden 1. Her time to reaffirm the debt expired on December 6, 2014,[2] without her doing so. As a result, the car was no longer property of her estate and the automatic stay terminated, allowing Golden 1 to take any action with respect to the car permitted under California law.[3]

Debtor continued to pay the current installments to Golden 1 and Golden 1 never objected to Debtor's failure to reaffirm.[4] In January 2015, Debtor obtained her § 727 discharge.

Relying on Debtor's schedules, Golden 1 filed a POC in the total amount of $17,282.29, composed of a $13,907 secured claim and a $3,375.29 unsecured balance, Claim No. 1-1. Golden 1 thus

---

[2] See § 521(6) (requiring the debtor to reaffirm secured debt within 45 days of the first § 341(a) meeting of creditors).

[3] See §§ 521(a)(7); 362(h)(1).

[4] "[N]othing in BAPCPA prevents debtors and secured creditors from engaging in what scholars have variously described as 'voluntary ride-through,' 'creditor acquiescence,' or 'informal reaffirmations.'" In re Jensen, 407 B.R. 378, 389-90 (Bankr. C.D. Cal. 2009).

-4-

sought to share pro rata on its unsecured claim in any distribution to unsecured creditors.[5]

Trustee informally objected to the unsecured portion of Golden 1's POC and, through a series of emails, attempted to convince Golden 1 to reduce its unsecured claim to $0. Trustee maintained that Golden 1 was not entitled to an unsecured deficiency claim because Debtor intended to reaffirm the debt, had not defaulted on the loan, and continued to make payments. Further, Trustee explained to Golden 1 that by giving up its unsecured claim, it would receive about $300 less:

> The trustee has about $4,000 on hand. After compensation, there will be about $3,000 to distribute. The 3 unsecured claims on file aggregate $10,646.77: (1-1) Golden 1 $3,375.29; (2-1) Golden 1 $4,912.03; and (4-1) American Express $2,359.45. If POC 1-1 is withdrawn, then Golden 1 would receive about 68% (2,040) instead of 78% ($2,340), a difference of $300.

Trustee later filed a formal objection to Golden 1's unsecured claim but, apparently still hoping the matter would resolve, did not notice a hearing. There, Trustee argued for disallowance of the unsecured portion of Golden 1's claim because (1) it was based on an obligation that was contingent and not in default and (2) there was insufficient evidence proving the amount of the alleged deficiency, such as fair market value of the car and the present balance owed under the Sale Contract.

Since the matter did not resolve, on October 23, 2015,

---

[5] There were three proofs of claim filed in the case, two by Golden 1 and one by American Express.

-5-

Trustee filed his amended objection, including supporting documents and a notice of hearing. Trustee argued that the unsecured portion of Golden 1's claim should be disallowed because the documents in support of the claim were insufficient under Rule 3001(c) and Golden 1 was oversecured by $3,000. Trustee also sought attorney's fees and costs under the attorney fee provision in the Sale Contract, contending that it was reciprocally enforceable under Cal. Civ. Code § 1717.

In support of his objection, Trustee submitted an appraisal showing the car's value at $16,708 as of October 16, 2015. Trustee also submitted his declaration, stating that the balance owed on the car was $13,736.28[6] as of September 29, 2015, the car appraised at $16,708 as of October 16, 2015, and Debtor was current on the loan. Trustee also informed the court about his efforts to informally resolve the dispute.

In his memorandum of points and authorities, Trustee argued that since Golden 1 was oversecured, the unsecured portion of its claim should be disallowed in total. Trustee also maintained that the bankruptcy court had discretion to determine the date for valuation. He argued that since the purpose of the valuation was for a general unsecured distribution not yet made, the value should be determined as of the date of the hearing on Trustee's objection - October 16, 2015. Trustee finally argued that he was entitled to attorney's fees and costs under the

---

[6] This balance evidently reflected the on-going payments made by Debtor on the loan. The balance was $18.72 less than what Trustee previously asserted the balance was as of September 15, 2015. It is unclear where the discrepancy came from.

holding and reasoning in <u>Americredit Fin. Servs., Inc. v. Penrod (In re Penrod)</u>, 611 F.3d 1158 (9th Cir. 2015).

Golden 1 opposed, asserting that its POC was supported by documentation sufficient to allow the unsecured claim in full. Golden 1 further argued that the valuation date for the car should be the petition date and not the date of the claim objection. Golden 1 requested an opportunity to submit its own appraisal. Finally, Golden 1 contended that Trustee could not avail himself of the attorney fee provision in the Sale Contract because Trustee was not a party to the contract and the Sale Contract was no longer property of the estate under § 362(h). Golden 1 maintained that the attorney fee request was unreasonable and that Trustee had breached his fiduciary duty by spending over $8,600 in objecting to Golden 1's unsecured claim when the estate had only $4,000 for distribution.

On December 7, 2015, the bankruptcy court entered civil minutes continuing the hearing on the claim objection to January 19, 2016, to allow Trustee to submit evidence of his attorney's fees and costs in litigating the claim objection and to allow Golden 1 to obtain an appraisal of the vehicle.

Two weeks later, Trustee submitted evidence that his counsel spent 24.3 hours on the matter for a total of $8,640 in attorney's fees and that he incurred $338.67 in costs.

Golden 1 then submitted an appraisal showing the car's value at $13,833.29 as of January 22, 2016. Golden 1 also argued that Trustee's claim objection essentially rendered the estate insolvent and maintained that the fees requested were unreasonable. According to Golden 1, since the estate had only

$4,000 on hand at the outset of the dispute, spending 24.3 attorney hours to prepare the claim objection was excessive.

Prior to the February 29, 2016 hearing on the claim objection, the bankruptcy court issued a tentative ruling sustaining Trustee's objection and reclassifying Golden 1's claim as fully secured. In reaching its decision, the court noted the following: Based upon Golden 1's January 21, 2016 appraisal, the car's value was $13,833.29. The loan balance was less than that amount - $13,736.28 - as of September 29, 2015, and Debtor was current on the loan. Based on these facts, the bankruptcy court concluded that the loan balance as of January 21, 2016, was less than $13,736.28, and "still clearly less than $13,833.29," and thus Golden 1 was an oversecured creditor. Accordingly, the court found Golden 1 had no basis for asserting an unsecured claim against the estate.

Alternatively, the bankruptcy court found Golden 1's deficiency claim was "at best" contingent or unliquidated and estimated Golden 1's unsecured claim against the estate at $0 based upon the following undisputed facts: (1) Golden 1 agreed to accept voluntary payments from Debtor; (2) Golden 1 had not proceeded against the collateral; and (3) Debtor had made all installment payments due under the loan both before and after the bankruptcy. Accordingly, the court concluded that Debtor is "likely to pay Golden 1 in full without resort to its collateral."

The bankruptcy court finally concluded that Trustee's attorney's fees and costs were reasonable, subject to some

adjustments. In its ruling, the court observed that Golden 1 had sufficient time to resolve the matter and prevent the fees and costs from accruing. The bankruptcy court ordered Golden 1 to pay Trustee the fees and expenses no later than seven days after the entry of the order on the objection.

At the February 29, 2016 hearing, Golden 1's counsel sought to clarify some points. First, she argued that Golden 1 was not obligated to reduce the amount of the claim to account for post-petition payments received by Debtor based on the Supreme Court's ruling in Ivanhoe Bldg. & Loan Assn. v. Orr, 295 U.S. 243, 246 (1935). The court was not persuaded, finding the case distinguishable on the facts.[7] In addition, during the course of the argument, the bankruptcy court also determined that Golden 1 had waived its right to assert an unsecured claim against the bankruptcy estate by not declaring a default.[8]

On February 29, 2016, the bankruptcy court issued its civil

---

[7] In Ivanhoe the claim was reduced by a non-debtor third party who was also liable on the claim. The Ivanhoe court held that where a claim is subject to reduction under state law because it was partially paid by a non-debtor co-obligor, the amount of the proof of claim need not be reduced for distribution purposes unless the claim was going to be paid in full. The bankruptcy court distinguished the case by noting that here Debtor was paying on the loan even though she had no obligation to pay whereas in Ivanhoe there was nothing voluntary about the third party paying on a claim which it was legally obligated to pay. In essence, the bankruptcy court determined that the voluntary payments by the original obligor - Debtor - were not similar to the required payments by the non-debtor co-obligor in Ivanhoe. The Panel has no issue with that analysis.

[8] The waiver ruling was not incorporated into the court's February 29, 2016 civil minute order. The Panel's decision is not predicated on waiver.

-9-

minutes sustaining Trustee's claim objection and scheduling a further hearing on Trustee's request for additional fees. The civil minutes largely incorporated the court's tentative ruling, stating in relevant part:

> Golden 1 has no deficiency claim against the estate as it has elected not to declare a default under the loan agreement with the debtor, not to repossess the subject vehicle, and it has continued to accept payments form the debtor on account of its claim. . . .
>
> The failure of the debtor to reaffirm Golden 1's debt does not have the effect of making 'the Sale Contract . . . no longer property of the estate.' [Section] 362(h) says nothing about the loan agreement giving rise to the secured creditor's claim. That provision references only the 'personal property of the estate or of the debtor securing in whole or in part a claim.' It is only the collateral securing the secured creditor's claim - i.e., the vehicle - that is 'no longer . . . property of the estate.' 11 U.S.C. § 362(h)(1).

The bankruptcy court also rejected Golden 1's argument that Trustee had breached his fiduciary duty to unsecured creditors. Finally, in its ruling, the bankruptcy court reopened the record so that Trustee could amend his request for attorney's fees and costs and for Golden 1 to challenge the reasonableness of the fees and costs, but noted: "The record is closed as to all other issues."

On March 1, 2016, Golden 1 filed a notice of appeal from this ruling, commencing BAP No. EC-16-1065.

On March 7, 2016, Trustee filed a pleading requesting $12,579.60 in attorney's fees and costs. In response, Golden 1 argued that Trustee was not entitled to invoke the attorney fee provision in the Sales Contract based upon Cal. Civ. Code § 1717 and again contended that the requested fees were unreasonable.

-10-

Golden 1 asserted that under Penrod, there was no reciprocity granted to Trustee because the bankruptcy court had concluded that Golden 1 had no claim against the estate and thus could not enforce its rights under the Sale Contract. If Golden 1 could not enforce its rights it argued, then Trustee likewise could not enforce his. Trustee filed a reply requesting an additional $2,025 in fees.

In advance of the continued hearing on the claim objection, the bankruptcy court issued a tentative ruling to sustain the claim objection. The court's tentative ruling indicated that Golden 1's challenge to Trustee's ability to utilize the attorney fee provision in the Sales Contract based on reciprocity and Penrod was untimely. The court further indicated that with the exception of certain fees inappropriately included in Trustee's request, the bankruptcy court would allow the requested fees.

On April 11, 2016, the bankruptcy court heard the matter. Again, Golden 1's counsel sought clarification on a number of points set forth in the court's tentative ruling. Among other things, she maintained that Golden 1 preserved its arguments regarding the applicability of Penrod and Trustee's request for attorney's fees. The bankruptcy court responded: "Oh, I think it did."

On the same date, the bankruptcy court entered its civil minutes in support of its determination to sustain Trustee's claim objection and award of attorney's fees and costs to Trustee.

On April 19, 2016, the bankruptcy court entered an order

-11-

sustaining the claim objection, disallowing the unsecured portion of the claim, and awarding Trustee $14,092.50 in attorney's fees and $343.10 in costs. In that ruling, the court discussed Golden 1's untimely argument regarding the reciprocity of the attorney fee clause:

> [E]ven if the court were to address the reciprocity argument, Golden 1 has missed the point. Golden 1 mischaracterizes the court's ruling. If the court has ruled 'that Golden 1 cannot enforce its rights under the sale contract against the estate,' Golden 1 cannot assert even its secured claim against the estate, clearing the way for the estate to sell the debtor's vehicle free and clear of Golden 1's secured claim. Obviously, Golden 1 still holds its secured claim against the estate, and that claim is based on Golden 1's rights under the contract.

> . . .

> In short, the action initiated by Golden 1 filing an unsecured proof of claim is an action on the contract. The trustee is prevailing. See Penrod v. AmeriCredit Financial Services, Inc. (In re Penrod), 802 F.3d 1084, 1087-88 (9th Cir. 2015). This is an adequate basis for applying the reciprocity rule of Cal. Civ. Code § 1717(a).

On April 22, 2016, Golden 1 filed its notice of appeal from that order, commencing EC-16-1117.

Golden 1 sought a stay pending appeal from the bankruptcy court as to the payment of attorney's fees and costs, which the bankruptcy court granted. In its ruling granting the stay, the bankruptcy court reiterated that Golden 1 had waived its argument that Penrod did not apply to Trustee's request for attorney's fees because Golden 1 failed to raise the argument in its initial opposition to Trustee's objection. The court went on to say that if it indicated Golden 1 had not waived the argument (meaning at the April 11, 2016 hearing), it was unintended.

-12-

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (B). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Did the bankruptcy court abuse its discretion in estimating Golden 1's claim at $0?

Did the bankruptcy court err by awarding attorney's fees and costs in favor of Trustee and against Golden 1 based upon the attorney fee provision in the Sale Contract and Cal. Civ. Code § 1717?

## IV. STANDARDS OF REVIEW

Orders resolving claims objections can raise both legal issues and factual issues. We review the legal issues de novo and the factual issues under the clearly erroneous standard. Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 918 (9th Cir. BAP 2011).

We review a bankruptcy court's estimation of a claim for abuse of discretion. Ryan v. Loui (In re Corey), 892 F.2d 829, 832 (9th Cir. 1989).

We will not disturb the bankruptcy court's award of attorney's fees and costs unless the court erroneously applied the law or abused its discretion. Renfrow v. Draper, 232 F.3d 688, 693 (9th Cir. 2000); Fry v. Dinan (In re Dinan), 448 B.R. 775, 783 (9th Cir. BAP 2011).

Review of an abuse of discretion determination involves a two-pronged test; first, we determine de novo whether the bankruptcy court identified the correct legal rule for

-13-

application.  See United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc).  If not, then the bankruptcy court necessarily abused its discretion.  Id. at 1262.  Otherwise, we next review whether the bankruptcy court's application of the correct legal rule was clearly erroneous; we will affirm unless its findings were illogical, implausible, or without support in inferences that may be drawn from the facts in the record.  Id.

## V.  DISCUSSION

The bankruptcy court disallowed Golden 1's unsecured deficiency claim on several bases and, in the alternative, found the claim contingent or unliquidated and estimated it for purposes of allowance at $0.  Although Golden 1 raises numerous issues on appeal relating to both decisions, we need not discuss or decide if every basis for the court's decision was correct.  Rather, we may affirm the bankruptcy court's decision on any ground fairly supported by the record.  Wirum v. Warren (In re Warren), 568 F.3d 1113, 1116 (9th Cir. 2009).

## A.  Estimation of Claims

We agree with the bankruptcy court's assessment that since Golden 1 had not declared a default, its unsecured deficiency claim was "at best" contingent or unliquidated.  Golden 1 does not argue otherwise on appeal.  Indeed, at the February 29, 2016 hearing, Golden 1's counsel admitted that the deficiency claim was contingent and agreed that the court could estimate the claim.

> THE COURT:  All right.  But this is an unliquidated contingent claim.  Couldn't I just as easily say I'm estimating your claim at zero?

-14-

MS. PEO: You could. You could.

THE COURT: I mean, isn't that –
MS. PEO: And -- and I –

THE COURT: -- what we're doing here?

MS. PEO: -- and that's the purpose of -- of -- of my citing to both 506(a) and 502(c) to just, you know, the Code contemplates that this can be liquidated without need of foreclosure. And here I think that the relevant figures are the value of the collateral, which we've submitted evidence to, and the amount of the claim, which I believe under Ivanhoe is –

THE COURT: but you keep –

MS. PEO: -- 17,000.

THE COURT: -- leaving out one thing. The debtor's paying. And you seem to be -- your client seems to be perfectly happy with that. So you're getting payment, and you've got collateral. All right? Any claim against the estate is dependent on liquidation of your collateral and declaration to default, which isn't going to happen from what I can tell.

It is generally settled that "if all events giving rise to liability occurred prior to the filing of the bankruptcy petition", the claim is not contingent. Nicholes v. Johnny Appleseed of Wash. (In re Nicholes), 184 B.R. 82, 88 (9th Cir. BAP 1995) (citing Fostvedt v. Dow (In re Fostvedt), 823 F.2d 305, 306 (9th Cir. 1987) ([T]he rule is clear that a contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor.")). The bankruptcy court correctly observed that Golden 1's deficiency claim under California law was dependent upon its first declaring a default. See Cal. Civ. Code § 2983.3(a) ("In the absence of default in the performance of any of the buyer's obligations under the contract, the seller or

-15-

holder may not accelerate the maturity of any part or all of the amount due thereunder or repossess the motor vehicle."). Therefore, "at best" the deficiency claim was a contingent one.

Moreover, a debt is liquidated if it is capable of "ready determination and precision in computation of the amount due." In re Fostvedt, 823 F.2d at 306. "The test for 'ready determination' is whether the amount due is fixed or certain or otherwise ascertainable by reference to an agreement or by a simple computation." In re Nicholes, 184 B.R. at 88. Here, the amount of the deficiency was not readily ascertainable by reference to the Sale Contract or by a simple computation. Indeed, the parties focused on valuation of the car by submitting appraisals, but the date for such valuation was contested. In addition, the actual amount of the deficiency depended upon a number of factors due to the fact that Debtor was timely making the installment payments and was current on the loan. As a result, it may be that the value of the car would exceed the amount due under the loan due to the ongoing payments.

Under § 502(c)(1), a bankruptcy court may estimate for purposes of allowance "any contingent or unliquidated claim, the fixing or liquidation of which . . . would unduly delay the administration of the case." Section 502(c) was enacted to "further the requirement that all claims against a debtor be converted into dollar amounts." Interco Inc. v. ILGWU Nat'l Ret. Fund (In re Interco Inc.), 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992). Courts use estimation "to facilitate the speedy resolution of claims in bankruptcy courts." Id. Such a claim

-16-

is "allowed," meaning that the Bankruptcy Code expressly authorizes the trustee to pay it, as if it was not contingent or unliquidated.

Neither the Code nor the Rules prescribe any method for estimating a contingent or unliquidated claim. The bankruptcy court should use "whatever method is best suited to the circumstances" in estimating a claim. Bittner v. Borne Chem. Co., 691 F.2d 134, 135 (3d Cir. 1982). Therefore, a court has broad discretion when estimating the value of an unliquidated claim.[9] In re Corey, 892 F.2d at 834.

In deciding whether to estimate the deficiency claim, the bankruptcy court observed that Golden 1 had not proceeded against its collateral because Debtor was current on the loan. Therefore, the court found that waiting for Golden 1 to seize and sell its collateral in order to liquidate its deficiency claim would unduly delay the administration of the case. The court further found that because (1) Golden 1 had agreed to accept voluntary payments from Debtor; (2) the value of the vehicle was at least $13,907; and (3) Debtor had made all installment payments due under the loan both before and after the bankruptcy, Debtor was "likely" to pay Golden 1 in full

[9] A party in interest generally brings a motion for estimation of a claim. In the informal email exchange between the parties, Trustee's counsel early on stated that he was asked to prepare an objection to the $3,375 unsecured portion of Golden 1's POC and a motion to estimate the claim for distribution purposes. Trustee did not file a motion for estimation, but did file the claim objection. Nonetheless, an objection to claim and motion to estimate claim are both brought pursuant to Rule 3007 and are contested matters within the meaning of Rule 9014.

-17-

without resort to its collateral. Based on these facts, the court estimated Golden 1's claim as $0.

Golden 1 asserts that these findings are not supported by the record. Golden 1 maintains no reaffirmation agreement was entered into and Debtor was discharged from personal liability on the debt. According to Golden 1, the bankruptcy court gave no weight to the fact that Debtor was absolved of personal liability, and it failed to consider that there was a very real possibility that Debtor may refuse to make voluntary payments if the vehicle broke down or was involved in an accident.

We are not convinced. Golden 1 cannot complain that it will be precluded from collecting any deficiency from Debtor personally which might arise in the future should it repossess the car and sell it for less than the balance due. This is a risk it chose when it did not pursue reaffirmation or immediately seek stay relief so it could repossess and sell the car as soon as the time to reaffirm expired. Had it done so, the deficiency would be liquidated and it could share in the estate distribution. "When a nondefaulting debtor is discharged while retaining the collateral, the principal disadvantage to the creditor is the possibility that the value of the collateral will be less than the balance due on the secured debt. But this is a risk in all installment loans, and presumably the creditor has structured repayment to accommodate it." Home Owners Funding Corp. v. Belanger (In re Belanger), 962 F.2d 345 (4th Cir. 1992).

Further, Golden 1's arguments regarding other possibilities, such as Debtor's refusal to make voluntary

-18-

payments, a vehicle breakdown or an accident, are nothing more than possibilities. While anything is possible, the burden of proof in claims estimation is preponderance of the evidence. Under the circumstances in this case, we cannot say that the bankruptcy court abused its discretion in concluding that it was more likely than not Debtor would continue to pay Golden 1 on the loan and Golden 1 would not have to look to its collateral. See In re Corey, 892 F.2d 829, 834 (9th Cir. 1989) (estimating claims at zero because of their "highly speculative nature"); In re Pac. Gas & Elec. Co., 295 B.R. 635, 675–76 (Bankr. N.D. Cal. 2003) (estimating antitrust claims at zero where claimants failed to make their case, the debtor asserted defenses that appeared to have merit, and the claimants had not established any meaningful measure of damages); In re Kaplan, 186 B.R. 871, 874, 878 (Bankr. D.N.J. 1995) (noting that "the court must determine the value of the claim according to its best estimate of the claimant's chances of ultimately succeeding in a state court action" and estimating the claim at zero because the claimant "most likely would not succeed on a state court action").

Finally, Golden 1 argued that a claim is to be measured as of the petition date and postpetition conduct such as the voluntary payments should be disregarded. If we look at the facts as known on the petition date, Debtor stated an intention to reaffirm. Assuming she did that, there would be no deficiency as to the estate and estimating the claim at zero

based on petition date facts is also appropriate.[10]

**B.    Attorney's Fees**

The Bankruptcy Code does not provide a general right to recover attorney's fees. Heritage Ford v. Baroff (In re Baroff), 105 F.3d 439, 441 (9th Cir. 1997). Nevertheless, a prevailing party on a bankruptcy law claim may recover attorney's fees if recovery is permitted under a state statute or contract. Cohen v. de la Cruz, 523 U.S. 213, 220-21 (1998); Cardenas v. Shannon (In re Shannon), 553 B.R.380, 2016 WL 4009673 at *11 (9th Cir. BAP 2016); Redwood Theaters, Inc. v. Davison (In re Davison), 289 B.R. 716, 722 (9th Cir. BAP 2003).

The bankruptcy court awarded Trustee attorney's fees and costs in the amount of $14,436.60, based on an attorney fee provision in the Sale Contract which stated:  "You will pay our reasonable costs to collect what you owe, including attorney fees, court costs, collection agency fees, and fees paid for other reasonable collection efforts."  Under some circumstances, Cal. Civ. Code § 1717 renders unilateral fee provisions such as this one reciprocal. See Santisas v. Goodin, 17 Cal.4th 599, 610-11 (1998).

"Three conditions must be met before [section 1717] applies." Bos v. Board of Trustees, 818 F.3d 486, 489 (9th Cir. 2016) (citing In re Penrod, 802 F.3d at 1087).  "First, the action generating the fees must have been an action 'on a

---

[10] Since we conclude that the bankruptcy court did not abuse its discretion in estimating Golden 1's unsecured deficiency claim at $0, it is unnecessary to address issues raised by Golden 1 pertaining to § 506.

-20-

contract.' Second, the contract must provide that attorney's fees incurred to enforce it shall be awarded either to one of the parties or to the prevailing party. And third, the party seeking fees must have prevailed in the underlying action." Id. If all three conditions are met, Trustee may recover his attorney's fees from Golden 1, "provided that [Golden 1] would have been entitled to recover its fees had it prevailed." In re Penrod, 802 F.2d at 1087.

On appeal, Golden 1 argues that there was no reciprocity with which to invoke Cal. Civ. Code § 1717. According to Golden 1, the attorney fee provision in the Sale Contract does not run both ways because the bankruptcy court's final order held that it had no deficiency claim against the estate. Golden 1 maintains that the bankruptcy court's decision precludes it from enforcing its rights under the Sale Contract against the estate. Thus, reciprocity is lacking.

We are not persuaded. First, at oral argument, counsel for Golden 1 conceded that if Golden 1 had prevailed in the claim objection, it would have a claim for attorney's fees under Cal. Civ. Code § 1717. Thus, reciprocity was present. Next, the bankruptcy court found that Golden 1's reciprocity argument - the same one it makes on appeal - was untimely and waived because Golden 1 did not make the argument in its initial opposition to Trustee's objection. The bankruptcy court reiterated its finding of waiver in its ruling regarding the stay pending appeal. The record supports this ruling. See Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir. 2003) (noting that a motion for rehearing "may not be used to raise arguments

-21-

or present evidence for the first time when they could reasonably have been raised earlier in the litigation"). Finally, even if the argument were not waived, as the bankruptcy court explained, Golden 1 has missed the point. The court's ruling on the deficiency claim did not prohibit Golden 1 from enforcing its rights under the Sale Contract. As noted by the court, Golden 1 still held a secured claim based on its rights under the Sale Contract and Golden 1 continued to rely on the contract to assert a secured claim against the estate.

In the end, the bankruptcy court concluded that by filing an unsecured proof of claim, Golden 1 initiated an action on the contract and Trustee was the prevailing party. Had Golden 1 prevailed on its deficiency claim against the estate it would have had an entitlement to attorney's fees; the estate should likewise be able to do so on a reciprocal basis. See Reynolds Metals Co. v. Alperson, 25 Cal.3d 124, 127-128 (1979). In short, all three conditions for application of Cal. Civ. Code § 1717 were met.

Golden 1's final argument is that the fees arising out of the claim objection are unreasonable under a cost-benefit analysis. "When a cost benefit analysis indicates that the only parties who will likely benefit from [a service] are the trustee and his professionals," the service is unwarranted and a court does not abuse its discretion in denying fees for those services. Estes & Hoyt v. Crake (In re Riverside-Linden Inv. Co.), 925 F.2d 320, 321 (9th Cir. 1991).

Clearly, bankruptcy proceedings are intended to benefit the creditors and the estate, and not to benefit the attorneys.

-22-

However, there is no indication in the record that Trustee went beyond what was necessary to defend his position or have his attorney render services which would only benefit his attorney. From the beginning, Trustee thought that the matter could be resolved without resort to protracted proceedings. The increased expense arose because Golden 1 continually chose to litigate its positions to support a deficiency claim which would reap $300 from the bankruptcy estate. Nothing in the record shows that Trustee could have foreseen this type of protracted litigation or factored it into his initial cost-benefit analysis when deciding to pursue the claim objection. Without following through with the litigation to the end, there was little Trustee could do short of conceding payment on the claim - a result that would have been detrimental to the estate.

Fees allowable pursuant to Cal. Civ. Code § 1717 are subject to a reasonableness requirement. The bankruptcy court found that the attorney's fees incurred, with some exceptions, were reasonable and necessary because (1) Trustee had to litigate this objection extensively; (2) there were novel issues presented by the objection; (3) expansive research was required; (4) Golden 1 vehemently opposed; (5) there were extensive communications among the parties; (6) there were numerous pleadings filed by the Trustee; and (7) the protracted nature of the proceedings (lasting nearly 10 months), warranted the fees and costs requested by Trustee. These factual findings are plausible and logical.

In sum, based on our examination of the record, we conclude the bankruptcy court employed the appropriate standards to

determine the fees were reasonable and did not abuse its discretion in determining the proper fee allowance.

## VI.  CONCLUSION

For the reasons set forth above, we AFFIRM.